### Traders' National Bank of Fort Worth v. S. M. Fry, Trustee, et al.

Delivered October 10, 1896.

**1. Deed of Trust for Benefit of Creditors—Preferences—Fraud—Charge of Court.**

A preferential trust deed was attacked on the ground that a preferred claim in
favor of the grantor's attorney was fraudulent, as excessive, and it was disputed in
the evidence whether the fee was merely for the services of the attorney in drawing
the deed, or for drawing it and defending the mortgage, with legal advice thereon.
The court instructed on the issue of fraud, that all the circumstances surrounding
the parties at the time of the transaction should be considered; and submitted as a
special issue the question, "What sum was a reasonable amount for an attorney's
fee for the services done and contracted to be done by the attorney in regard to the
making and defending the mortgage?" Held, that the issue was properly submit-
ted, and the charge was sufficiently specific as to the reasonableness of the fee.

**2. Same—Sales on Credit as Badge of Fraud—Charge.**

Where goods conveyed by a trust deed with preferences do not in value exceed the
debts preferred, and the trust deed requires its prompt execution in disposing of the
property, a charge of court that a provision in the deed authorizing the trustee to
sell on credit rendered it prima facie fraudulent, is properly refused, as being on
the weight of the evidence.

**3. Same—Validity of Trust Deed Which Includes Fraudulent Claims.**

The inclusion of a fraudulent claim in a trust deed with preferences does not ren-
der it void as to innocent creditors secured thereby.

**4. Same—Fraud—Charge of Court.**

A requested charge that a deed of trust with preferences would be fraudulent if
executed to enable the grantor to force a compromise with his creditors, is properly
refused where the court has already charged that the deed would be fraudulent if it
was not made to enable the preferred creditors to realize their debts, but was made
to encumber the property, and thereby prevent other creditors from collecting their
debts.

**5. Same—Acceptance by Creditor.**

Where a creditor preferred by a trust deed, with knowledge of the deed, stated
to the trustee that he would look to him for payment, and was told by the trustee
that he would see that he was paid, this was a sufficient acceptance.

**6. Same.**

So, where the attorney of a preferred creditor, on being told ¹by the trustee that his client was preferred in the deed, replied "all right," this sufficiently showed an acceptance.

**7. Same.**

Where a creditor whose claim for rent is preferred, on being informed of the preference, told the trustee that the preference was satisfactory, and that he considered himself secure, this warrants a finding of acceptance by such creditor, although he subsequently sued out a distress warrant for his rent.

**8. Same—Excessive Commission to Trustee.**

That the commission given to the trustee in a trust deed for the benefit of creditors is exorbitant, does not necessarily render the instrument void, where the commission was allowed by the grantor in good faith.

**9. Practice—Consolidation of Suits—Objection Too Late.**

A party cannot object to the consolidation of actions after having acquiesced therein for nearly two years.

**10. Trust Deed—Judgment Against Attaching Creditor.**

Where the trustee in a trust deed for the benefit of preferred creditors recovered judgment for the value of goods attached by a non-preferred creditor, who had had them sold under the attachment and credited the amount on his judgment, the court properly ignored the credit entered on the judgment in the attachment suit.

**11. Practice—Interest—Costs of Appeal.**

Where the judgment below awarded interest at a higher rate than was authorized, and the matter was called to the attention of the trial court in a motion for a new trial, the judgment will be reformed on appeal, and the costs of the appeal will be taxed against the appellee.

Appeal from Tarrant.    Tried below before Hon. W. D. Harris.

*Hogsett & Orrick*, for appellant.—1.    It is error for the court, in the submission of a special issue, to assume that to be a fact which is controverted in the evidence, without submitting it to the jury in some manner for its deciding the controverted question.    The court nowhere submits to the jury the question as to whether the services rendered by Capps & Canty were contracted to be done in the making and defending of the mortgage or merely in its making.    Cole v. Crawford, 69 Texas, 126; Newbolt v. Lancaster, 83 Texas, 274.

2.    Provision for sales on credit, like possession in the mortgagor, renders the trust deed or mortgage prima facie fraudulent.    Hamburg v. Wood, 66 Texas, 171; Gibson v. Hill, 21 Texas, 225.

3.    The law presumes fraud from the unexplained possession by the seller of the thing sold, and a special charge embodying such proposition should be given when requested.    Hamburg v. Wood, 66 Texas, 177; Gibson v. Hill, 21 Texas, 225; Baldwin v. Carlton, 22 Texas, 730; Baldwin v. Peel, 22 Texas, 790; Wait on Fraudulent Conveyances, 449.

4.    A debtor being insolvent, though he may have the right to charge his property with reasonable attorney's fees and trustee's fees in a case like the one at bar, makes the conveyance with intent to hinder, delay and defraud his creditors, if he in bad faith and on account of

his willful and reckless disregard of the interest of his creditors, agrees to pay unreasonably large or exorbitant attorney's fees and trustee's fees, or either of them, and further provides that such fees shall be first paid out of the proceeds of the conveyed property. Bump on Fraud. Conv., sec. 15.

5. A trust deed made with a controlling motive and object not bona fide to secure creditors, but to hold such trust deed as a cloak or shield to protect the maker from his creditors, or for the purpose of forcing his creditors to compromise, is fraudulent. Mixon v. Symonds, 2 Texas Civ. App., 629; Haas v. Kraus, 75 Texas, 106; Pierce on Mercantile Mortgages, sec. 120; Bump on Fraud. Conv., 29.

6. The court correctly charged the jury that there was no evidence even tending to show that the other creditors (that is, other than Capps & Cantey, Mayo, Fleming and Ross) in any manner assented to the mortgage before the attachment was served, in so far as the said charge affected the right of S. H. Fisher. Alliance Milling Co. v. Eaton, 25 S. W. Rep., 614; Murphy v. Milling Co., 26 S. W. Rep., 854; Wallis v. Taylor, 67 Texas, 431; Cobbey on Chat. Mortgages, secs. 413, 414.

*Capps & Cantey*, for S. H. Fisher, interpleader.—The court erred in instructing the jury as follows: "You are instructed that there is no evidence even tending to show that the other creditors preferred in the mortgage in any manner assented to the mortgage before the attachment was levied, and you will not make any finding as to such others. Because the testimony showed (without contradiction) that W. M. Lampton, one of the firm of Lampton Bros., had authority and did represent said Fisher in executing and accepting said mortgage." Northrup v. Fire Ins. Co., 48 Wis., 420; Sargeant v. Salsberg, 22 Wis., 132; Jaffrey v. Brown, 29 Fed. Rep., 476; Jones on Chat. Mort., sec. 105; 1 Am & Eng. Ency. of Law, 335.

*Ross & Chapman* and *Capps & Cantey*, for appellee.

TARLTON, Chief Justice.—On September 22, 1891, Lampton Bros., an insolvent firm composed of W. M. Lampton and R. M. Lampton, executed and delivered to S. M. Fry, trustee, who accepted it, a deed in trust conveying to him their stock of merchandise to secure certain debts scheduled as follows:

"Capps & Cantey, account now due......................$1000.00
Minnie M. Fleming, balance on note dated March 1, 1890, and
    interest on same from date at 10 per cent................ 200.00
S. S. Mayo........................................... 200.00
Geo. C. Hudgins.....................................  60.00
Dwyer Bros.......................................... 127.00
T. D. Ross, Agent, on account for rent................... 570.50
Ben O. Smith ........................................ 135.00

Fort Worth National Bank, note dated September 12, 1891...$400.00
E. S. Lampton, note dated March 15, 1890, bearing interest at
6 per cent.............................................2100.00
S. H. Fisher, note dated March 15, 1890, bearing interest at 6
per cent..............................................2000.00
J. W. Nelson & Son, Shoe Company, note dated March 15,
1890, bearing interest at 6 per cent......................  485.50
L. Boydon & Co., note dated March 15, 1890, bearing interest
at 6 per cent.........................................  414.91
J. Faust & Son, note dated March 15, 1890, bearing interest at
6 per cent............................................  286.08
N. D. Dodge, note dated March 15, 1890, bearing interest at 6
per cent..............................................   54.87
E. E. Spencer & Co., note dated February 15, 1890, bearing
interest at 6 per cent..................................   33.16
John Ennis, account...................................  214.20
Mound City Shoe Co., account.........................  293.15
The Standard Shoe Co., account........................  147.35
J. Faust & Son, account...............................  443.50"

The instrument provided that the trustee should proceed to sell the goods, "for cash or on credit, at public or private sale, at wholesale or retail, in such parcel or parcels, and in such manner as he may deem best for the interest of said creditors and the purposes of this trust;" that subject to the expenses incurred in the execution of the trust, the proceeds should be applied to the payment of the debts in their order named, each to be paid in full before anything is paid on the succeeding claims, payments to be made weekly. The trustee was empowered to employ the necessary clerks to carry out the purposes of the instrument, to pay the necessary rents, insurance and expenses, including a commission of ten per cent of the gross sales made by him in the execution thereof, to be retained out of the sales. He was empowered to engage attorneys and maintain and protect the property. He was required to execute the provisions of the trust as early as possible, consistent with his best judgment as to the interest of the creditors of the firm and the possibility of realizing the largest amount of money from the sale of the goods; provided that all goods on hand on the first day of February, 1892, should be sold in bulk at public auction for cash in hand, after proper advertisement for one week in a daily paper in the city of Fort Worth. The instrument required that any property or effects remaining after the execution thereof should be delivered to the grantors, who executed the deed as a firm and as individuals.

On September 24, 1891, the Traders' National Bank of Fort Worth, a creditor excluded from the deed in trust, sued out a writ of attachment, which it caused to be levied upon the stock of merchandise conveyed by the instrument  In the evening of the same day the bank

also sued out a writ in garnishment, served upon Fry, the trustee, and founded on the attachment proceeding.

On October 8, 1891, Fry, the trustee, brought suit against the bank for conversion of the goods, seeking to recover their alleged value, $14,000. On March 19, 1894, the garnishment suit was consolidated, by order of the court, with the cause of Fry v. The Bank. Meanwhile, in the attachment proceeding, the bank had caused the goods to be sold as perishable property. Their proceeds, amounting to $4500, were paid into the registry of the court.

On April 21, 1892, the bank obtained judgment on its demand in the sum of $6524.75, of which $6152.28 bore interest at twelve per cent, and $372.43 bore interest at six per cent. By it the judgment was credited with $4156.23, the proceeds of the goods sold, less the costs.

On the main issue presented by the pleadings of the defendant, whether the instrument was fraudulent, we are constrained to find, in accordance with the verdict of the jury, against the contention of the appellant bank. We also find that, at the date of the service of the writ of garnishment, the following creditors, with claims as stated in the deed of trust, had accepted the benefits of that instrument, viz: Capps & Cantey, Minnie M. Fleming, S. S. Mayo, and T. D. Ross, agent; and that the remaining creditors had not accepted.

At the date of their seizure under attachment, the goods were of the value of $8740.67.

On June 21, 1895, the court, upon the verdict of a jury, entered judgment in favor of the trustee Fry, against the defendant bank, in the sum of $2642.43, with interest from that date at six per cent; of which amount it directed the trustee to pay to Capps & Cantey $1208.93, the amount of their claim, with interest from September 22, 1891, to Minnie M. Fleming the sum of $284.96, the amount of her claim, with interest from March 1, 1890, to the date of judgment, to S. S. Mayo the sum of $258.52, the amount of his claim, with interest from September 21, 1891, and to T. D. Ross, agent, the sum of $694.40, the amount of his claim, with interest at six per cent from September 21, 1891, reserving to S. M. Fry, trustee, the sum of $184.35, as commissions accruing to his favor under the instrument. The remaining beneficiaries in the instrument were denied recovery.

From this judgment the appellant bank appeals; and of it, in cross-assignments, the appellee Fry and the beneficiary S. H. Fisher, an intervener, also complain.

*Opinion.*—Among the items of indebtedness scheduled in the deed in trust, that of $1000 to Capps & Cantey was assailed by the appellant as fraudulent, substantially as follows: It was alleged that the insolvent grantors contracted a debt of $1000 to Capps & Cantey as an attorney's fee for drawing the instrument; that the item was made a first charge on the property; that it was unreasonably large, and was by Lampton Bros. agreed to be paid "with wilful and reckless disregard to the inter-

est of their creditors, and with intent to hinder, delay or defraud their creditors," in that the attorney's fee was an unreasonably large compensation for the service performed and to be performed, and was an unjust and fraudulent burden imposed by them upon their assets.

Among the special issues to the jury was one submitted with reference to this item, as follows: "Eighth Question: What sum was a reasonable amount for an attorney's fee for the services done and contracted to be done by Capps & Cantey in regard to the making and defending the mortgage, taking into consideration the manner in which the same was to be paid?"

Also, in connection with this item, the defendant requested two special issues, as follows: "1. What is a reasonable attorney's fee for drawing the trust deed in evidence and the advice attendant upon its execution? 2. What is a reasonable attorney's fee for attending to the litigation arising out of said trust deed, said litigation being the cause now on trial?"

It is undisputed that the attorney's fee which Lampton Bros. agreed to pay to Capps & Cantey in connection with this instrument was $1000. The evidence, however, may be said to raise a conflict as to whether the fee contemplated the drawing of the instrument and advice with reference to the business of the grantors incident to the execution of the instrument, or whether, in addition to these services, it also contemplated attention to any litigation which might subsequently arise out of its execution.

Expert evidence was introduced with reference to the value of the services, (1) in drawing the instrument and in giving advice with regard thereto; (2) with reference to the drawing of the instrument alone; and (3) with reference to the drawing of the instrument, the giving of advice thereto, and the rendition of services in litigation subsequently arising.

We understand the testimony of Mr. Capps to be to the effect that a reasonable fee for preparing this trust deed and advising Lampton Bros. in their business matters before drawing up the deed, was $1000; and we do not find this estimate contradicted by the estimates of other expert witnesses. Several attorneys do indeed testify to a lower sum, but their estimate refers to the rendition of services exclusively for the drawing of the deed, without reference to the matter of advice in connection with the business. The estimates fixed by the expert testimony for the drawing of the deed vary from $250 to $1000, all agreeing that the fee of $1000 for services contemplating the drawing of the deed and attention to subsequent litigation arising therefrom would not be excessive.

Error is assigned to the manner in which the court submitted the eighth question above quoted, on the ground that the issue thus submitted imports an assumption by the court that the services contracted for included not only the making of the deed, but also the defending of the mortgage, whereas under the evidence this question should have been left to the decision of the jury. Concomitantly, error is also as-

signed to the refusal of the court to submit the question of what is a reasonable attorney's fee in the manner embodied in the two special instructions requested by the appellant and above set out.

If we admit that the question as submitted by the court involved an assumption by it such as is contended for, we yet think that the appellant is in no attitude to complain of this action. Evidence in regard to the excessiveness of the fee could only have been admitted with reference to its tendency to prove under the pleadings of the defendant that the fee was so excessive as to justify on the part of the jury an inference of fraud.

On the issue of fraud the court had previously charged that "in determining the question as to whether the mortgage was made for the purpose of hindering, delaying or defrauding their creditors or not, the jury may take into consideration the transaction itself and all the facts and circumstances surrounding the parties at the time of the transaction, and before and after said time, so far as the same throw light, if they do throw light, upon the question of the purpose or intent of Lampton Bros. in making the mortgage in question."

The accuracy of this instruction is not complained of. Under it the jury found, in the light of all the facts and circumstances surrounding the transaction, including the circumstances under which this fee of $1000 was agreed upon, that the instrument was not fraudulent. Therefore, as the amount charged was contractual between the parties, and as their good faith in the transaction must be conceded, the question arises, how was it hurtful to the defendant to submit in the manner criticized the matter contained in the special issue referred to? Having correctly instructed the jury upon the issue of fraud, we think the court should have abstained from submitting to them the matter of the reasonableness of this fee. Its excessiveness, if such existed, was at most a badge of fraud, the effect of which should have been left to the jury uninfluenced by any special reference thereto. Its submission was not to the serious detriment of the appellant. Indeed, as we think, the jury would not have been justified in concluding that this fee was agreed upon, as alleged by the defendant, "with willful and reckless disregard to the interest of their creditors, and with intent to hinder, delay and defraud" them.

It is next insisted that as the instrument provided for a sale of the goods by the trustee on credit, the jury should have been instructed that it was prima facie fraudulent, and that they should so find unless this badge of fraud was rebutted.

It appears in this instance that the value of the goods did not exceed the debts named, and while the instrument provides for sales on credit, it also required its prompt execution, providing that the trust should be discharged by the first of February, thereafter, or that the goods should be then sold in bulk at public auction for cash. It exacted of the trustee the utmost diligence in disposing of the property and applying it to the purposes named.

Under such circumstances, we think that an instruction upon the effect of the one special provision referred to would have been upon the weight of the evidence. Cases cited by learned counsel for appellant approve instructions as to presumptions arising from badges of fraud; but as said in Bank v. Day, 87 Texas, 103, "In view of our statute which prohibits the court from charging upon the weight of the evidence, we gravely doubt whether or not the cases cited   *   *   *   have not gone too far in upholding similar instructions."

These remarks also apply to the fifth assignment and to the requested instruction therein referred to, with regard to the effect of possession on the part of the grantors, or of their concurrent possession with the trustee. In this connection, it must also be noted that the jury found the possession in Fry exclusively. Hence there was no basis for the special instruction.

The special charge No. 9, the refusal of which is complained of in the ninth assignment of error, was properly rejected. As we read it, it substantially embodies the proposition that "an honest and valid debt of an innocent holder should be tainted on account of its association with a fraudulent claim." This proposition we have heretofore been constrained to condemn. Solomon v. Wright, 8 Texas Civ. App., 568; Reilly v. Hunt, 6 Texas Civ. App., 238; Kraus v. Haas, Id., 665; · Kraus v. Haas, 86 Texas, 687.

The matter contained in the special charge No. 15, having reference to the effect of unreasonably large attorney's fees and trustee's fees, has been substantially disposed of in preceding remarks; and for reasons already expressed, the charge was properly rejected.

We decline to reverse the judgment on account of the omission of the court to instruct the jury as requested in special charge No. 16, that if the trust deed was given with a controlling motive and object not bona fide to secure the creditors of Lampton Bros., but to hold the deed in trust as a cloak or shield to protect them from their creditors, or to use the instrument in order to force a compromise or settlement with their creditors for less than 100 cents on the dollar, they would find the deed to be fraudulent. The facts stated in this instruction would assuredly condemn the instrument as to all chargeable with notice of them. But we think that the subject matter of the charge was sufficiently covered in the court's general instruction, wherein the jury are told, that if they should "believe from the evidence that the mortgage made by Lampton Bros. was not made for the purpose of enabling the preferred creditors named therein to realize upon their debts, but was made for the purpose of incumbering their property, and thereby preventing the Traders' National Bank, or any other creditor, from collecting its debt," it would be their duty to find the instrument fraudulent.

It is insisted under the twenty-first and twenty-fifth assignments of error that the evidence did not justify the submission to the jury of the question whether S. S. Mayo, Minnie M. Fleming or T. D. Ross,

agent, had accepted the benefits of the instrument before service of the appellant's writ of garnishment upon the trustee. We therefore consider the evidence relating to the question of acceptance by these parties severally.

1. It appears that Mayo saw Fry the next morning, and with knowledge that he had been preferred in the instrument, informed the trustee that he would look to him for his money, and that the trustee stated that he would see that Mayo was paid. We think this evidence sufficient to sustain a finding of acceptance by Mayo. We do not regard it as material that he should have read the deed in trust and have been familiar with its terms, further than was indicated by him.

2. It appears that Minnie M. Fleming did not confer personally with the trustee, but that she was represented in the matter of her claim by one Brannon, an attorney; that on the morning after the execution of the instrument he interviewed the trustee with reference to the claim; that he was informed that she was one of the preferred creditors, and that he said, "All right." We think these facts sufficient to support the finding of an acceptance by Minnie M. Fleming, through her representative Brannon.

3. It appears that the claim of T. D. Ross, agent, was a claim by H. L. Washington for rent on the building occupied by Lampton Bros.; that Ross saw the trustee on the morning after the execution of the instrument; that he was informed by the trustee that the claim was preferred; that he stated to the trustee at the time that the preference was satisfactory, and that he thought himself entirely secure. We think that these facts were sufficient as a basis for a finding of acceptance by Ross, although it further appears that he subsequently levied a distress warrant upon a part of the goods. Having accepted the instrument, Ross could not thereafter resort to a distress warrant. Bauman v. Jaffray, 6 Texas Civ. App., 495. But the jury were not required to find that because of the resort to the distress warrant, a prior acceptance by Ross had occurred.

Complaint is made here, and was made in the motion for a new trial filed below, that the rate of interest awarded by the jury from September 21, 1891, at eight per cent, was excessive on the claims of Minnie M. Fleming, S. S. Mayo and T. D. Ross. It appears that the claim of Minnie M. Fleming was evidenced by note, with interest from date at ten per cent. Hence the appellant cannot complain of the assessment by the jury of the interest at eight per cent on that claim.

But we are at a loss to explain the assessment of eight per cent on the claims of Mayo and Ross, which bore, as it would appear, interest at the legal rate. On September 21, 1891, this rate had been reduced from eight to six per cent. See Acts of 1891, p. 87. An inspection of the judgment, however, shows that, in spite of the finding of the jury, interest at six per cent was awarded upon the claim of Ross. Hence we sustain the assignment complaining of the assessment by the jury of a rate of eight per cent interest, instead of six per cent, but only in so far

as it refers to the claim of Mayo, and we reform the judgment accordingly; and as this matter was called to the attention of the court in the motion for a new trial, it will be our duty to tax the costs of appeal accordingly.

In answer to the first special issue, the jury found that the deed in trust was not fraudulent. In answer to special issue 8½ they found that the commission of ten per cent to the trustee provided by the instrument was exorbitant, and that seven and one-half per cent commission was reasonable. It is contended that these findings are conflicting, and that the latter finding rendered the trust deed fraudulent and void. We do not think that the latter consequence follows. It may be that the commission agreed upon was unreasonable, but if made in good faith and upon the honest belief that it was the proper compensation for the labor undertaken by the trustee, the instrument, upon the fact of excess to the extent of two and one-half per cent, should not be necesasrily condemned as fraudulent and void.

As indicated in our conclusions of fact, we are not prepared to hold that the verdict failing to condemn the instrument as fraudulent is without support in the evidence.

We proceed next to consider the cross-assignments urged by the appellee Fry.

1. The parties in the suit of Fry, trustee, against the bank were the same as in the case of the bank against Fry, trustee, as garnishee. The creditors who were parties in interest intervened in the proceeding. Hence the action of the court in consolidating the two cases was correct, as the court was thus enabled to determine in one action all the issues involved.

But if the consolidation was improper in the first instance, the appellee is not in an attitude to complain of that action by the court, as the order of consolidation was entered on March 19, 1894, and acquiesced in until May 6, 1895, when for the first time the trustee moved for a severance. It follows that the court correctly undertook to adjudicate the rights of the appellant arising out of the garnishment proceedings. As the credit of $4151.23 entered upon the judgment in the case of the bank against Lampton Bros. but represented the proceeds of the identical goods herein involved and sold in the attachment proceedings, and as the bank was charged in this case with the value of these goods, the court properly ignored the credit entered upon the judgment in the attachment suit as above indicated. Action of a different character would have held the appellant to a double recovery in favor of the appellee, which would be manifestly inequitable.

2. The fourth cross-assignment is, that "the court erred, under the findings of the jury, in refusing to render judgment in favor of the plaintiff for the full amount of his commissions upon the whole amount of the value of the goods."

The finding of the jury in answer to the special issue No. 8½, of the submission of which the appellee does not complain, was that 7½ per

cent was a reasonable commission to the appellee for acting as the trustee. The judgment upon this finding awarded the trustee 7½ per cent on the aggregate amount of debts held by creditors who had accepted prior to the garnishment. We do not regard this judgment as contrary to the finding of the jury. It is not complained of as contrary to the provisions of the deed in trust, or to the rights of the trustee as thereby fixed. The jury's finding is not expressed with reference to the value of the goods or to the amount of the indebtedness to the creditors accepting prior to the accrual of the appellant's rights by garnishment.

The interpleader S. H. Fisher, one of the creditors named in the deed of trust, complains in a cross-assignment that the court erred in instructing the jury that there was no evidence tending to show that he had assented to the mortgage before the attachment was levied. It is claimed that this charge was erroneous, "because the testimony showed without contradiction that W. M. Lampton, one of the firm of Lampton Bros., had authority and did represent said Fisher in executing and accepting said mortgage." We conclude upon the testimony, that if Lampton had authority to represent Fisher in the matter of acceptance, he neither in fact represented him nor did he purport to represent him prior to the service of the appellant's writ of garnishment.

Upon the whole case, we find no material error, save in the matter of the assessment of interest as above indicated. The excess arising out of the application of the eight per cent rate to the claim of Mayo instead of the six per cent rate, will require a reduction of the judgment to the extent of $13.52, and of the same reduction upon the amount awarded Mayo; and for reasons already indicated, the costs of this appeal will be adjudged against the appellee Fry.

Thus reformed, the judgment is affirmed.

*Reformed and affirmed.*

HUNTER, Associate Justice, did not sit in this case.